RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 3/30/06
GL

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **R&B FALCON DRILLING USA, INC.** | CIVIL ACTION 03-861 |
| VERSUS | CHIEF JUDGE HAIK |
| **DONALD S. CAGINS, JR.** | MAGISTRATE JUDGE METHVIN |

*********************************************************************************

## JUDGMENT

This matter came before the Court for a Declaratory Judgment as to maintenance and cure on August 16, 2004.

### History of the Case

Donald S. Cagins, Jr. was employed as a roustabout by R&B Falcon Drilling USA, Inc. on June 25, 2002. On January 22, 2003, Mr. Cagins allegedly fell and was injured aboard the RBF 253, a jack up drilling rig. He continued working on the vessel until January 25, 2006 at which time he was transported from the rig for medical treatment after complaining of swollen testicles and tailbone pain. Mr. Cagins was first evaluated at Lake Charles Memorial Hospital and again two (2) days later at Wesley Medical Center. He was then referred to Dr. Bruce McCarthy with whom he had an appointment on January 31, 2003. Mr. Cagins failed to attend a follow up visit with Dr. McCarthy, but instead began attending appointments with Dr. Kenneth Adatto. Finally, on December 18, 2003, Mr. Cagins underwent an independent medical evaluation with Dr. Douglas Bernard. This case was filed on October 7, 2003.

## Findings and Discussion

As discussed by the Fifth Circuit Court of Appeals in *Pelotto v. L&N Towing Company, et al*, 604 F.2d. 396 (5th C., 1979) and numerous other cases, maintenance and cure are ancient remedies under the law whereby a seaman who takes sick or is injured while in the service of the ship can recover certain monetary amounts regardless of the negligence of the employer or the unseaworthiness of the vessel. Maintenance is a living allowance paid to a seaman, as long as he is outside of a hospital, until he reaches the point of "maximum cure". Cure, on the other hand is payment for necessary hospital, medical, and therapeutic expenses until the seaman reaches that same point. *Guevara v. Maintenance Overseas Corp.*, 59 F.3d. 1496, (5th C. 1995). When dealing with the issue of maintenance and cure for a seaman, it has long been held that ambiguities and doubts are to be resolved in favor of the seaman. *Springborn v. American Commerical Barge Lines, Inc. Et al*, 767 F.2d. 89 (5th C. 1985), citing *Vaughn v. Atkinson*, 369 U.S. 527, 532, 82 S.Ct. 997, 1000, 8 L.Ed.2d. 88, 92 (1962) and others.

In the case at hand, this court finds that Donald S. Cagins is entitled to maintenance and cure as he was injured or fell ill while in the service of the ship. Although evidence was presented showing that Mr. Cagins visited Dr. Jerry Kimble, a chiropractor, for back pain prior to the accident (See Plaintiff's Exhibit #2) and Dr. Bernard testified that, in his opinion, Mr. Cagin's disc condition pre-existed the January 2003 incident (see Trial Transcript), the court is required to resolve all doubts in favor of the seaman. Mr. Cagins' treating physician testified that his disc condition was related to the incident aboard the RBF 253. Additionally, Mr. Cagins was certified for employment without restrictions after a complete physical examination by R&B Falcon's physician. Whether Mr. Cagins condition was present prior to the January 2003 incident, and perhaps aggravated by that occurrence, is unknown and this issue will be resolved

in favor of the seaman.

The more difficult issue before the Court is this: For what period of time is Mr. Cagins owed maintenance and cure benefits? A seaman's right to maintenance and cure terminates when the seaman reaches maximum medical cure. *Pelotto,* 604 F.2d. at 400. If treatment will merely relieve pain and suffering, but not otherwise improve the seaman's physical condition, it is proper to find that the point of maximum medical cure has been reached. *Id.* R&B Falcon suspended or terminated Mr. Cagin's maintenance and cure benefits as of February 18, 2003. Falcon now seeks a ruling finding that action was proper. As noted by the Fifth Circuit in *Johnson v. Marlin Drilling Co.,* 893 F.2d 77 (5th C. 1990), a shipowner must have unequivocal medical evidence that maximum medical cure has been reached before terminating a seaman's benefits. The record does not reflect that R&B Falcon had unequivocal medical evidence supporting the termination of maintenance and cure as of February 18, 2003.

With respect to Mr. Cagin's benefits, it is hereby found that maximum medical cure was reached on August 5, 2003, the date Dr. Adatto recommended surgery. On that date, Dr. Adatto reported the following:

> Anatomically, there is a 10-15% disability of the lumbar spine. The patient needs to avoid repetitive stooping or bending and repetitive lifting of objects over 25-50 pounds. The patient needs to avoid prolonged sitting or standing in the same position for 45 minutes, plus/minus 15 minutes without being able to move around and change position. **The disability and restrictions are the same with or without surgery.** (emphasis added)

Additionally, Dr. Adatto discussed in his deposition that he had explored various other treatment options with Mr. Cagins, resulting in a stabilized condition, leaving only the option of surgery. The surgery, however, would be elective and intended to relieve Mr. Cagin's pain, not result in any real change in Mr. Cagin's physical condition. (Defendant's Exhibit #1, beginning at page

19). According to Dr. Adatto's testimony and the evidence presented, Mr. Cagin's disability and restrictions would still be present whether he undergoes surgery or not. In fact, Dr. Adatto released Mr. Cagins for work with the restrictions he outlined (Defendant's Exhibit 1, page 37). Nowhere in the evidence presented can it be found that the surgery at issue would cure Mr. Cagin's condition or change his disability. That is, the functional capacity of Mr. Cagin's back would not change with the surgery. The surgery would simply relieve his pain and, perhaps, make for a more enjoyable daily life. That, according to Fifth Circuit precedence, is not sufficient to support a holding finding his employer responsible for providing such a medical procedure. Consequently, it is held that Donald Cagins reached maximum medical cure on August 5, 2003, the date his treating physician stated that his condition was "stable" and that surgery would not change his disability or restrictions. The Court notes for the record the opinions of both Dr. McCarthy and Dr. Bernard that Mr. Cagins exaggerated his symptoms and/or overreacted in examinations. These opinions certainly had some bearing on the Court's decision, and were taken quite seriously.

With that, it is hereby held that R&B Falcon is responsible for cure benefits to Donald Cagins through August 5, 2003. It should be noted, however, that the Court is being generous in granting any award to Mr. Cagins as he failed to make any further requests for medical treatment after his initial visit to Dr. McCarthy or give notice of treatment with Dr. Adatto to his employer or Shuman Consulting.

With respect to the payment of maintenance, the evidence presented by Mr. Cagins was sketchy to say the least. The evidence presented showed that Mr. Cagins voluntarily shared a living space with his girlfriend, Markita Jordan, and that she paid for the rent, utilities, and food. Although Mr. Cagins testified that he contributed to these costs, he failed to produce any credible

evidence proving his actual expenses or the money contributed. He also failed to produce any credible evidence showing that Ms. Jordan used the funds he allegedly gave her for rent, utilities, and food.

In *Hall v. Noble Drilling, Inc.*, 242 F.3d. 582 (5th C. 2001), the Fifth Circuit held that a seaman is entitled to reasonable maintenance costs as long as he has incurred the expense. Although this Court is left to rely mainly on Mr. Cagins testimony, which was less than credible overall, it does not believe that Mr. Cagins contributed zero to the living expenses for the entire period of time at issue. Although women are often gracious and understanding creatures, this Court has yet to encounter one whose generosity is limitless. With that, it is hereby found that the $20.00 per day maintenance rate paid to Mr. Cagins by the defendant until February 18, 2003 is reasonable for the Hattiesburg, Mississippi area and is supported by the controverted expert testimony of Dr. J. Stuart Wood, Falcon's economist. As Mr. Cagins did not reach the point of maximum cure until August 5, 2003, he is entitled to receive maintenance payments in the amount of $20.00 per day through that date.

The Court is not going to address the issue of Mr. Cagins' employment application in any great detail as Mr. Cagins' right to maintenance and cure is not affected by the issues raised. Although Mr. Cagins' dishonesty is certainly noted by the Court and will likely be recognized by future employers, the evidence does not show that Falcon would not have hired him had his application been prepared differently. Nor has it been shown that his misrepresentations were causally connected to the injury sustained. Consequently, the employment application issues have little bearing on this ruling.

In conclusion, it is **HEREBY HELD** that R&B Falcon USA, Inc. suspended and/or terminated Donald S. Cagins' maintenance and cure benefits prematurely on February 18, 2003. It is **FURTHER HELD** that Mr. Cagins reached the point of maximum cure on **August 5, 2003** and is due maintenance and cure payments, as discussed above, from R&B Falcon USA, Inc. through that date.

THUS DONE AND SIGNED on this the 29th day of March, 2006.

CHIEF JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA